

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed October 02, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| William White and Ann Withington | § | Case No. 12-40008-11 |
| DEBTOR | § | |

### ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION, AS MODIFIED

CAME ON FOR CONSIDERATION by the Court at the confirmation hearing held on August 16, 2012, the Debtor's Amended Plan of Reorganization filed August 15, 2012 ("Plan") as described by that certain Amended Disclosure Statement dated June 12, 2012, filed by William White and Ann Withington , Debtors in the above-styled and numbered case. The Plan having been transmitted to all creditors, equity interest holders and parties-in-interest and the Court after considering the remaining objections to the Plan filed by Jack Hodge ("Hodge"), and having heard testimony of witnesses and arguments of counsel determined that confirmation of the Plan, as filed,

should be Conditionally Denied, however, the Court provided the Debtors with an opportunity to modify the Plan which the Court believed it could then confirm. Pursuant to the Court's directive, the Debtors on September 10, 2012 filed a Modification to the Plan ("Modification). The Court having considered the Modification and having been informed that based upon the Modification Hodge no longer objects to confirmation of the Plan with the Modification, concludes as follows:

1.      The majority of all creditors in all classes and the equity holders voting have voted to accept the Plan.

2.      The Plan complies with the applicable provisions of Title 11, and the Debtor, as the plan proponent, has complied with the applicable provisions of Title 11.

3.      The Plan has been proposed in good faith and not by any means forbidden by law.

4.      The requisite number of impaired classes of claims or interests voting have voted to accept the Plan.

5.      All payments made or promised to be made by the Debtor or any other person for services or for costs and expenses in, or in connection with, the Plan, and incident to the case, have been disclosed to the Court and are reasonable or, if to be fixed after Confirmation of the Plan, will be subject to the approval of the Court.

6.      The identity, qualifications, and affiliations of the persons who are to serve the Debtor, after Confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable, and consistent with the interests of the creditors and equity security holders and with public policy.

7.      The identity of any insider that will be employed or retained by the Debtor and his compensation has been fully disclosed.

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - Page 2

8.    The Plan does not affect any rate change of any regulatory commission with jurisdiction over the rights of the Debtor.

9.    The Plan is not likely to be followed by further need for reorganization.

10.    All Section 1930 fees shall be paid by the Debtor on or before the Effective Date of the Plan or as agreed to by the Debtor and the United States Trustee.

11.    All creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation.

12.    The Plan does not affect any retiree benefits.

13.    The Modifications filed on September 10, 2012 do not adversely affect any creditor who has previously voted to accept the Plan.

14.    The Debtors reserve the right to object to the amount and allowance of all claims after Confirmation.   All such objections shall be filed within sixty (60) days of the Effective Date, as defined in the Plan.

It is accordingly,

ORDERED, ADJUDGED AND DECREED that the Modification filed on September 10, 2012 are approved. It is further

ORDERED ADJUDGED AND DECREED that the Debtor's Amended Plan of Reorganization, as modified by the Modification attached hereto as collectively as  Exhibit "A", is confirmed. It is further

ORDERED, ADJUDGED AND DECREED the Debtor is hereby required to file quarterly operating reports with the United States Trustee until such time as the case in closed. The Debtor is further required to pay the United States Trustee quarterly fees until such time as the clerk of the court closes the case.

### End of Order ###

Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| WILLIAM WHITE AND ANN WITHINGTON | § | Case No.12-40008 |
|     DEBTOR | § | |
| | § | |

**AMENDED PLAN OF REORGANIZATION OF WILLIAM WHITE AND ANN WITHINGTON DATED AUGUST 14, 2012**

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW, William White and Ann Withington, Debtors and Debtors-in-Possession in the above-referenced bankruptcy cases, and proposes the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtors into 14 separate classes.

**ARTICLE I**

**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.      "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.      "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.      "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.      "**Case**" shall mean this Chapter 11 case.

7.      "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.      **"Claimant"** shall mean the holder of a Claim.

9.      **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.      **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.      **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.      **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.      **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

14.      **"Creditor"** shall mean any person having a Claim against Debtor.

15.      **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.      **"Debtor(s)"** shall mean William White and Ann Withington.

17.      **"Disbursing Agent"** shall mean the Reorganized Debtor.

18.      **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19.      **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.      **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.      **"Final Confirmation"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.      **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.      **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, January 2, 2012.

24. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. ''**Prime Rate**' shall mean the prime rate as published Wall Street Journal .

26. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

27. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

28. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

29. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

30. **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1 Claims and Debts: Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan. Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4     **Modifications to Plan**:  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1     All trade and service debts and obligations, including ad valorem taxes for year 2013, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2     Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1     Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2     **Class 1**:        Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)

        **Class 2**:        Consists of **Allowed IRS Claims**  (Impaired)

| | |
|---|---|
| **Class 3**: | Consists of **Allowed Property Tax Claims** (Impaired) |
| **Class 4**: | Consists of **Allowed Secured Claim of Infinity** (Impaired) |
| **Class 5**: | Consists of **Allowed Secured Claim of Bank of America** (Not Impaired) |
| **Class 6**: | Consists of **Allowed Secured Claim of FYP** (Impaired) |
| **Class 7**: | Consists of **Allowed Secured Claim of Hodge** (Impaired) |
| **Class 8**: | Consists of **Allowed Secured Claim of Danforth** (Impaired) |
| **Class 9**: | Consists of **Allowed Secured Claim of SLS** (Impaired) |
| **Class 10**: | Consists of **Allowed Secured Claim of Bank of America** (Impaired) |
| **Class 11**: | Consists of **Allowed Secured Claim of Citibank** (Impaired) |
| **Class 12**: | Consists of **Allowed Secured Claim of Wells Fargo Auto** (Not Impaired) |
| **Class 13:** | Consists of Allowed **Secured Claim of Wells Fargo**(Impaired) |
| **Class 14:** | Consists of **Allowed Unsecured Claims** (Impaired) |

# ARTICLE 5
# TREATMENT OF CLASSES

5.1     <u>Satisfaction of Claims and Debts</u>:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2     **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of  Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $20,000 including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.  The Class 1 Claimants are not impaired under this Plan.

5.3     <u>Class 2 Claimants</u> (Allowed Priority Tax Creditor Claims) are impaired and shall be satisfied as follows: The Allowed Priority Amount of all Tax Creditor Claims shall be paid out of the revenue from the continued operations of the Debtors. The Tax Creditor Claims to the Internal Revenue Service ("IRS") for 1040 taxes claims in the priority amount of $10,000 . The basis for the IRS priority claim is the Debtor's 2011 income tax return which is not due as of yet. The Debtor's believes it will not owe any income taxes for 2011 and expects a refund. In the event the Debtor does owe income taxes for 2011, the  Plan intends to treat the IRS claim as a priority  Class 2 claim.  The Class 2 claim will be paid in full over a 60 month period from the date of the petition, commencing

on the Effective Date with interest at a rate of 3% per annum. Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan that is not timely cured herein. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

( a )    If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default, if not cured under © below.

( b )    If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

( c )    If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

( d )    The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

( e )    All payment will be sent to: Dorothy Claiborne/ IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above. The Class 2 creditor is impaired under this Plan.


5.4    Class 3 Claimants (The Allowed Property Taxes Claims) . The Allowed Amount of all Priority Property Tax Creditor Claims shall be paid out of the revenues of the Debtor. The Property Tax Creditor Claims which are to be paid under the Plan result from real property taxes on the Debtor's properties. Dallas County has filed a Proof of Claim in the amount of $74,085.41 for Ad Valorem real property taxes. Tarrant County has filed a Proof of Claim in the amount of $34,671.09 for ad valorem real property taxes. Certain Ad Valorem tax claims asserted will be paid

through the sale of certain properties as set forth below. After the sale of the properties the Debtor believes the amount of 2011 and 2012 Ad Valorem taxes owing to Dallas County will be $44,557.49 and the amount of Ad Valorem taxes owing to Tarrant County will be $24,180.55. These taxes will be paid over a 60 month period from the Petition Date commencing on the Effective Date. The Ad Valorem Taxes for real property taxes will receive post-petition pre-confirmation interest at the state statutory rate of 1% per month and post-confirmation interest at the rate of 12% per annum. The approximately monthly payment to the class 3 creditors will be $1,456.93. The Ad Valorem Taxing Authorities shall retain their liens, and their lien priority, to secure their Tax Claims until paid in full as called for by this Plan. The Class 3 Creditors are impaired under this Plan.

   5.5   Class 4 Claimant (Allowed Secured Claim of Infinity Loan Servicing) is impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note dated August 11, 2009 in favor of Infinity Loan Servicing ("Infinity") in the original principle amount of $26,631.10 ("Infinity Note 1"). The Note was secured by that certain Deed of Trust executed August 11, 2009 securing that certain real properties known as 5903/05 Revere, Dallas, Texas; 5917/19 Revere Dallas, Texas and 5914/16 Revere Dallas, Texas. (the "Properties"). The Infinity Note 1 was further secured by the Transfer of Tax lien on the Properties filed on record in Dallas County, Texas. As of the Petition Date, the balance on the Infinity Note 1 was asserted to be $24,500.83.The Debtor will enter into a New Infinity Note 1 in the original principal amount of $24,500.83[1] ("New Infinity Note 1"). The New Infinity Note 1 shall bear interest at the rate of 14% per annum . The Debtor shall pay the New Infinity Note 1 in 120 equal monthly payments of $387.78[2] commencing on the Effective Date.
   The Debtor executed that certain Promissory Note dated August 10, 2010 in favor of Infinity Loan Servicing ("Infinity") in the original principle amount of $37,150.41 ("Infinity Note 2"). The Infinity Note 2 was secured by that certain Deed of Trust executed August 10, 2010 securing certain real properties known as 5903/05 Revere, Dallas, Texas; 5917/19 Revere Dallas, Texas, 5914/16 Revere Dallas, Texas and 3515/17 Delmar Dallas, Texas. (the "Properties"). The Infinity Note 2 was further secured by the Transfer of Tax Lien on the Properties filed on record in Dallas County, Texas. As of the Petition Date, the balance on the Infinity Note 2 was asserted to be $35,790.24. The Debtor will enter into a New Infinity Note 2 in the original principal amount of $35,790.24[3] ("New Infinity

---

[1]The Debtor will be selling the property located at 5903-5905 Revere Place. The sale of this property will reduce the amount of New Infinity Note 1. The Debtor believes this will reduce the New Infinity Note 1 by approximately $6,000.

[2]The exact amount of the monthly payment will be determined by the balance of the New Infinity Note 1 after the adjustment for the payment of portion of Infinity Note 1 attributable to the 5903-5905 Revere Place property.

[3]The Debtor will be selling the property located at 5903-5905 Revere Place and 3515/17 Delmar. The sale of this property will reduce the amount of New Infinity Note 2. The Debtor believes this will reduce the New Infinity Note 2 by approximately $17,000.

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - Page 11

Note 2"). The New Infinity Note 2 shall bear interest at the rate of 14% per annum . The Debtor shall pay the New Infinity in 120 equal monthly payments of $563.06[4] commencing on the Effective Date.

The Debtor executed that certain Promissory Note dated August 11, 2009 in favor of Infinity Loan Servicing ("Infinity") in the original principle amount of $8,265 ("Infinity Note 3"). The Infinity Note 3 was secured by that certain Deed of Trust executed August 11, 2009 securing certain real properties known as 3515/17 Delmar Dallas, Texas. (the "Property"). The Infinity Note 3 was further secured by the Transfer of Tax Lien on the Properties filed on record in Dallas County, Texas. As of the Petition Date, the balance on the Infinity Note 3 was asserted to be $7,215.71. The Debtor will pay the Infinity note #3 in full at the closing of the sale of the 3515/17 Delmar property.

The Debtor reserves the right to pre-pay the New Infinity Note 1 and New Infinity Note 2 at any time without penalty. The Class 4 creditor shall retain its liens of the Debtor's properties until paid in full in accordance with this Plan. Class 4 is impaired under this Plan.

5.6    Class 5 Claimants (Allowed Secured Claims on Bank of America on Debtors' Homestead) are not impaired and will be satisfied as follows: the Debtor resides at 225 N. Rufe Snow, Keller, Texas ("Homestead"). The Debtor shall make  contractual payments on the Homestead. Bank of America shall retain its liens on the Homestead. The current interest rate on the Debtor's Homestead is 8% per annum. The Class 5 Creditor is not impaired under this Plan.

5.7    Class 6 Claimant (Allowed Secured Claim of FYP, LLC) is impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note dated June 23, 2011 in favor of FYP, LLC d/b/a Texas Property Tax Loans ("FYP") in the original principle amount of $36,897.36 ("FYP Note 1"). The FYP Note #1 Note was secured by that certain Deed of Trust executed June 23, 2011 securing that certain real property known as a 2.99 acre tract, Keller, Texas ("Keller Property") . The FYP Note 1 was further secured by the Transfer of Tax Lien on the Keller Property filed on record in Tarrant County, Texas. As of the Petition Date, the balance on the FYP Note 1 was asserted to be $36,062.52.The Debtor will enter into a New FYP Note 1 in the original principal amount of $36,062.52 ("New FYP Note 1"). The New FYP Note 1 shall bear interest at the rate of 14.9% per annum. The Debtor shall pay the New FYP Note 1 in 120 equal monthly payments of $586.58 commencing on the Effective Date.

The Debtor executed that certain Promissory Note dated July 23, 2011 in favor of FYP in the original principle amount of $16,424.52 ("FYP Note 2"). The FYP Note #2 was secured by that certain Deed of Trust executed July 23, 2011 securing that certain real properties known as 712-714 Windcrest Keller, Texas ("Windcrest Property") . The FYP Note 2 was further secured by the Transfer of Tax Lien on the Windcrest Property filed on record in Tarrant County, Texas. The Debtor will pay the FYP Note #2 in full at the closing of the sale of the  Windcrest Property.

The Debtor executed that certain Promissory Note dated August 29, 2011 in favor of FYP in the original principle amount of $9,160.44 ("FYP Note 3"). The FYP Note #3 Note was secured by that certain Deed of Trust executed August 29, 2011 securing that certain real property known as 5914-5916 Revere , Dallas, Texas ("5914-16 Property") . The FYP Note 3 was further secured by the Transfer of Tax Lien on the 5914-16  Property filed on record in Dallas County, Texas. As

---

[4]The exact amount of the monthly payment will be determined by the balance of the New Infinity Note 2 after the adjustment for the payment of portion of Infinity Note 2 attributable to the 5903-5905 Revere Place and the 3515/17 Delmar properties.

of the Petition Date, the balance on the FYP Note 3 was asserted to be $9,023.98.The Debtor will enter into a New FYP Note 3 in the original principal amount of $9,023.98 ("New FYP Note 3"). The New FYP Note 3 shall bear interest at the rate of 14.9% per annum . The Debtor shall pay the New FYP Note 3 in 120 equal monthly payments of $152.01 commencing on the Effective Date.

The Debtor executed that certain Promissory Note dated August 29, 2011 in favor of FYP in the original principle amount of $9,441.26 ("FYP Note 4"). The FYP Note #4 was secured by that certain Deed of Trust executed August 29, 2011 securing that certain real property known as 5903-5905 Revere, Dallas, Texas ("5903-05 Property") . The FYP Note 4 was further secured by the Transfer of Tax Lien on the 5903-05 Property filed on record in Dallas County, Texas. As of the Petition Date, the balance on the FYP Note 4 was asserted to be $9,300.61. The Debtor will pay the FYP Note #4 in full at the closing of the sale of the 5903-05 Property.

The Debtor executed that certain Promissory Note dated August 29, 2011 in favor of FYP in the original principle amount of $10,036.16 ("FYP Note 5"). The FYP Note #5 Note was secured by that certain Deed of Trust executed August 29, 2011 securing that certain real property known as 5917-5919 Revere , Dallas, Texas ("5917-19 Property") . The FYP Note 5 was further secured by the Transfer of Tax Lien on the 5917-19 Property filed on record in Dallas County, Texas. As of the Petition Date, the balance on the FYP Note 5 was asserted to be $9,886.65. The Debtor will enter into a New FYP Note 5 in the original principal amount of $9,886.45 ("New FYP Note 5"). The New FYP Note 5 shall bear interest at the rate of 14.9% per annum . The Debtor shall pay the New FYP Note 5 in 120 equal monthly payments of $165.87 commencing on the Effective Date.

The Debtor executed that certain Promissory Note dated August 29, 2011 in favor of FYP in the original principle amount of $8,830.72 ("FYP Note 6"). The FYP Note #6 was secured by that certain Deed of Trust executed August 29, 2011 securing that certain real property known as 3515-3517 Delmar, Dallas, Texas ("3515-17 Property") . The FYP Note 6 was further secured by the Transfer of Tax Lien on the 3515-17 Property filed on record in Dallas County, Texas. As of the Petition Date, the balance on the FYP Note 6 was asserted to be $8,699.17. The Debtor will pay the Infinity note #3 in full at the closing of the sale of the 3515/17 Delmar property. The Debtor will pay the FYP Note 6 off in full at the closing of the sale of the 3515-17 Property.

The Debtor reserves the right to pre-pay the New FYP Note 1, New FYP Note 3 and/or New FYP Note 5 at any time without penalty. The Class 6 creditor shall retain its liens of the Debtor's property until paid in full in accordance with this Plan. Class 6 is impaired under this Plan.

5.8    Class 7 Claimant (Allowed Secured Claim of Jack Hodge) is impaired and shall be satisfied as follows: The Debtor executed that certain Real Estate Lien Note dated August 13, 2008 in favor of Jack Hodge in the original principal amount of $312,000 ("Hodge Note #1"). The Hodge Note #1 was secured by that certain Deed of Trust executed August 13, 2008 securing that certain real property known as 2.99 acres on Rufe Snow Drive, Keller, Texas as more fully described in the Deed of Trust ("Hodge Note #1 Property"). As of the Petition Date, the balance on the Hodge Note # 1 was asserted to be $312,000. The Debtors believe that the value of the Hodge Note Property #1 exceeds the amount due on the Hodge Note #1. The Debtor will enter into a New Hodge Note #1 in the original principal amount of $312,000 ("New Hodge Note #1"). The New Hodge Note # 1 shall bear interest at the rate of 9% per annum. The New Hodge Note #1 will be paid interest only in 17 equal monthly payments of $2,340 commencing on the Effective Date. All unpaid principal and interest on the New Hodge Note #1 will be due and payable on or before the last day of the 18th month after the Effective Date. If the Hodge Note #1 is not paid in full with collected funds on or

before the last day of the 18th month after the Effective Date, then the automatic stay shall be immediately terminated and lifted as to the Hodge Note #1 Property without further order of this Court and without further notice within this bankruptcy proceeding, and Hodge may thereafter pursue his rights and remedies as to the Hodge Note #1 Property.

The Debtor executed that certain Promissory Note dated March 23, 2007 in favor of Jack Hodge in the original principal amount of $415,000 ("Hodge Note #2"). The Hodge Note #2 was secured by that certain Deed of Trust executed March 23, 2007 securing that certain real property known as 3515-17 Delmar, Dallas, Texas, 5903-05 Revere Place, Dallas Texas and 712-714 Windcrest, Keller as more fully described in the Deed of Trust ("Hodge Note #2 Property"). As of the Petition Date, the balance on the Note was asserted to be $415,000. The Debtors believe that the value of the Hodge Note #2 Property exceeds the amount due on the Hodge Note #2. The Debtor will pay off the Hodge Note #2 in full (principal plus any accrued interest), as stated in Section 6.2.

The Debtor reserves the right to pre-pay the New Hodge Note # 1 at any time without penalty. All rights and remedies contained in the original Hodge Note #1 and the original Hodge Note #2 and their respective Deeds of Trust shall remain in full force and effect except has modified by this Plan. The Class 7 creditor shall retain its liens on the Debtor's property until paid in full in accordance with this Plan. Class 7 is impaired under this Plan.

5.9    <u>Class 8 Claimant</u> (Allowed Secured Claim of Joe Danforth) is impaired and shall be satisfied as follows: The Debtor executed that certain Real Estate Lien Note dated March 30, 2007 in favor of Joe Bill and Phyllis Danforth ("Danforth") in the original principle amount of $178,000 ("Danforth Note #1"). The Danforth Note #1 was secured by that certain Deed of Trust executed March 30, 2007 securing that certain real property known as 5914 -5916 Revere Place, Dallas, Texas as more fully described in the Deed of Trust (the "Danforth Note # 1 Property"). As of the Petition Date, the balance on the Danforth Note #1 was asserted to be $161,355. The value of the Danforth Note #1 Property is greater than or equal to the amount owed on the Danforth Note #1. The Debtor will enter into a New Danforth Note #1 in the original principal amount of $161,355 ("New Danforth Note #1"). The New Danforth Note #1 shall bear interest at the rate of 5% per annum. The Debtors shall pay the New Danforth Note #1 based upon a 25 year amortization. New Danforth Note #1 shall be paid in 59 equal monthly payments of $943.27 and one payment of all outstanding principal and interest on the 60th month from the Effective Date. Payments will commence on the Effective Date.

The Debtor executed that certain Real Estate Lien Note dated March 30, 2007 in favor of Danforth in the original principle amount of $186,200 ("Danforth Note #2"). The Danforth Note #2 was secured by that certain Deed of Trust executed March 30, 2007 securing that certain real property known as 5917-5919 Revere Place, Dallas, Texas as more fully described in the Deed of Trust (the "Danforth Note # 2 Property"). As of the Petition Date, the balance on the Danforth Note #2 was asserted to be $162,608. The value of the Danforth Note #1 Property is greater than or equal to the amount owed on the Danforth Note #2. The Debtor will enter into a New Danforth Note #2 in the original principal amount of $162,608 ("New Danforth Note #2").The Debtors shall pay the New Danforth Note #2 based upon a 25 year amortization. New Danforth Note #2 shall be paid in 59 equal monthly payments of $950.59 and one payment of all outstanding principal and interest on the 60th month from the Effective Date. Payments will commence on the Effective Date.

The Debtor reserves the right to pre-pay the New Danforth Note # 1 and/or New Danforth Note #2 at any time without penalty. The Class 8 creditor shall retain its liens and the priority of his liens of the Debtor's property until paid in full in accordance with this Plan. Class 8 is impaired under this Plan.

5.10    Class 9 Claimant (Allowed Secured Claim of Specialized Loan Servicing LLC) is impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note dated December 27, 2006 in favor of Southwest Funding, L.P.[5] ("SLS") in the original principle amount of $216,800 ("SLS Note"). The SLS Note was secured by that certain Deed of Trust executed December 27, 2007 securing that certain real property known as 3518-3520 Bremen, Dallas, Texas (the "SLS Property"). As of the Petition Date, the balance on the SLS Note was asserted to be $218,182.59. The value of the SLS Property is equal to or greater than the amount owed on the SLS Note. The Debtor will enter into a New SLS Note in the original principal amount of $237,091.36 ("New SLS Note"). The New SLS Note shall bear interest at the rate of 5% per annum. The Debtors shall pay the SLS in 360 equal monthly payments of $1,272.76 commencing on the Effective Date. The Debtor reserves the right to pre-pay the New SLS Note at any time without penalty. The Class 9 creditor shall retain its liens of the Debtor's property until paid in full in accordance with this Plan.

Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Creditor's Secured Claim.

In the event of any future default on any of other above-described provisions, Creditor shall provide written notice via certified mail to William White and Ann Withington at 225 North Rufe Snow Drive, Keller, Texas 76248, and to Debtors' attorney of record, Eric A. Liepins, at 12770 Coit Road, Suite 1100, Dallas, Texas 75251, indicating the nature of default. If Debtors fail to cure the default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail, then Creditor, may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property without further notice, order, or proceeding of this Court.

The acceptance by Creditor of a late or partial payment shall not act as a waiver of Creditor's right to proceed hereunder.

In the event that Creditor is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

In the event the Debtors default under this Stipulation and Creditor forwards a 30-day letter to Debtors, Debtors they shall be required to tender $100.00 for each default letter submitted in order to cure the default. Any notice of default that Creditor provides Debtors and/or Debtors' attorneys pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

At the request of the Creditor, the Debtors shall execute such documents and instruments as are necessary to reflect the Debtors as the borrowers of the Secured Claim, and to modify the terms of the obligation to conform with the provisions of the this Stipulation.

---

[5]Specialized Loan Servicing, L.P. asserts that it is either the servicer of Southwest Funding or its successor in interest. The Plan treatment proposed herein is without waiver of any claims the Debtor may have as to SLS's actual ownership of the Note or validity of any SLS claim.

In the event the Debtors sell the Subject prior to receiving their Chapter 11 discharge, Creditor shall be entitled to exercise its rights pursuant to 11 U.S.C. §363(k) and/or 11 U.S.C. §363(f) and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the original outstanding balance owing under the terms of the Note. If the proposed sale for the Subject Property is less than the outstanding balance owing under the Note, then Creditor's consent must be obtained in writing prior to any such sale.
Class 9 is impaired under this Plan.

5.11    Class 10 Claimant (Allowed Secured Claim of Bank of America) is impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note dated July 27, 2006 in favor of Overland mortgage, L.P.[6] ("BOA")  in the original principle amount of $280,000 ("BOA Note"). The BOA Note was secured by that certain Deed of Trust executed July 27, 2006 securing that certain real property known as 5829-5831 McCommas, Dallas, Texas  (the "BOA Property"). As of the Petition Date, the balance on the BOA Note was asserted to be $367,735.07. The value of the BOA Property is  equal to or greater than the amount owed on the BOA Note. The Debtor will enter into a New BOA Note in the original principal amount of $367,735.07 ("New BOA Note"). The New BOA Note shall bear interest at the rate of 5% per annum . The Debtors shall pay the New BOA Note in 360 equal monthly payments of $1,974.08 commencing on the Effective Date.

In the event that the Debtors default under the terms of the modified loan per the confirmed Chapter 11 plan, Claimant shall send written notice by Regular Mail and by Certified Return Receipt Requested Mail, postage pre-paid, to the Debtor and Debtor's counsel allowing Debtor a 10 day period from the date of such written notice to cure such delinquent payments. Cure payments must be made by certified funds only. In the event Debtors fail to cure such delinquent payments within such 10 day period or in event the Debtors become delinquent after two (2) notices of default, the Automatic Stay of 11 U.S.C. §362 shall terminate as to Claimant without further recourse and claimant shall be allowed to take any and all steps necessary to exercise any and all rights it may have in the collateral.

The Debtor reserves the right to pre-pay the New BOA Note at any time without penalty. The Class 10 creditor shall retain its liens of the Debtor's property until paid in full in accordance with this Plan. Class 10 is impaired under this Plan.

5.12    Class 11 Claimant (Allowed Secured Claim of Citibank) is impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note dated July 27, 2006 in favor of Overland Mortgage, L.P.[7]  ("Citibank")  in the original principle amount of $70,000 ("Citibank Note"). The Citibank Note was secured by that certain Deed of Trust executed July 27, 2006 securing that  certain  real  property  known  as  5829-5831  McCommas,  Dallas,  Texas[8]   (the  "Citibank

---

[6]Bank of America asserts that it is either the servicer of Overland Mortgage or its successor in interest. The Plan treatment proposed herein is without waiver of any claims the Debtor may have as to BOA's actual ownership of the Note or validity of any BOA claim.

[7]Citbank, N.A., as Trustee for Saco I Trust 2007-1 is the current owner and holder of the class 11 claim.

[8]The Citibank's deed was a second Lien on the McCommas property.

Property"). As of the Petition Date, the balance on the Citibank Note was asserted to be $75,750.08. The value of the Citibank Property is equal to or greater than the amount owed on the Citibank Note and the first lien on the Citibank Property. The Debtor will enter into a New Citibank Note in the original principal amount of $75,850.08 ("New Citibank Note"). The New Citibank Note shall bear interest at the rate of 5% per annum . The Debtors shall pay the New Citibank Note in 360 equal monthly payments of $407.18 commencing on the Effective Date. The Debtor reserves the right to pre-pay the New Citbank Note at any time without penalty.

In addition to the principal and interest payments described above, Debtors shall tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor. Debtors shall tender the necessary escrow payments together with the regular monthly mortgage payments, commencing on September 1, 2012 and continuing thereafter until the loan is paid in full.

Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Creditor's Secured Claim.

In the event of any future default on any of other above-described provisions, Creditor shall provide written notice via certified mail to William White and Ann Withington at 225 North Rufe Snow Drive, Keller, Texas 76248, and to Debtors' attorney of record, Eric A. Liepins, at 12770 Coit Road, Suite 1100, Dallas, Texas 75251, indicating the nature of default. If Debtors fail to cure the default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail, then Creditor, may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property without further notice, order, or proceeding of this Court.

The acceptance by Creditor of a late or partial payment shall not act as a waiver of Creditor's right to proceed hereunder.

In the event that Creditor is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

In the event the Debtors default under this Stipulation and Creditor forwards a 30-day letter to Debtors, Debtors they shall be required to tender $100.00 for each default letter submitted in order to cure the default. Any notice of default that Creditor provides Debtors and/or Debtors' attorneys pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

At the request of the Creditor, the Debtors shall execute such documents and instruments as are necessary to reflect the Debtors as the borrowers of the Secured Claim, and to modify the terms of the obligation to conform with the provisions of the this Stipulation.

In the event the Debtors sell the Subject prior to receiving their Chapter 11 discharge, Creditor shall be entitled to exercise its rights pursuant to 11 U.S.C. §363(k) and/or 11 U.S.C. §363(f) and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the original outstanding balance owing under the terms of the Note. If the proposed sale for the Subject Property is less than the outstanding balance owing under the Note, then Creditor's consent must be obtained in writing prior to any such sale.


Class 11  is impaired under this Plan.


ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - Page 17

Class 12 Claimant (Allowed Secured Claim of Wells Fargo[9]) is impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note dated December 27, 2006 in favor of Southwest Funding, L.P. [10] ("Wells Fargo") in the original principle amount of $262,000 ("Wells Fargo Note #1"). The Wells Fargo Note #1 was secured by that certain Deed of Trust executed December 27, 2006 securing that certain real property known as 3523-3525 Delmar, Dallas, Texas (the "Well Fargo Note #1 Property"). As of the Petition Date, the balance on the Wells Fargo Note #1 was asserted to be $367,735.07. The value of the Wells Fargo Note # 1 Property is equal to or greater than the amount owed on the Wells Fargo Note # 1. The Debtor will enter into a New Wells Fargo Note #1 in the original principal amount of $367,735.07 ("New Wells Fargo Note #1"). The New Wells Fargo Note # 1 shall bear interest at the rate of 5% per annum . The Debtors shall pay the New Wells Fargo Note #1 Note in 360 equal monthly payments of $1,974.08 commencing on September 1, 2012.

The Debtor executed that certain Promissory Note dated March 2, 2007 in favor of Southwest Funding, L.P. [11] ("Wells Fargo") in the original principle amount of $90,000 ("Wells Fargo Note #2"). The Wells Fargo Note #2 was secured by that certain Deed of Trust executed March 2, 2007 securing that certain real property known as 4700 Great Divide Drive, Fort Worth, Texas (the "Well Fargo Note #2 Property"). As of the Petition Date, the balance on the Wells Fargo Note #2 was asserted to be $129,714.22. The value of the Wells Fargo Note # 2 Property is equal to or greater than the amount owed on the Wells Fargo Note #2. The Debtor will enter into a New Wells Fargo Note #2 in the original principal amount of $129,714.22 ("New Wells Fargo Note #2"). The New Wells Fargo Note # 2 shall bear interest at the rate of 5% per annum . The Debtors shall pay the New Wells Fargo Note #2 Note in 360 equal monthly payments of $696.34 commencing on September 1, 2012.

In the event that the Debtors default under the terms of the modified loan per the confirmed Chapter 11 plan, Claimant shall send written notice by Regular Mail and by Certified Return Receipt Requested Mail, postage pre-paid, to the Debtor and Debtor's counsel allowing Debtor a 10 day period from the date of such written notice to cure such delinquent payments. Cure payments must be made by certified funds only. In the event Debtors fail to cure such delinquent payments within such 10 day period or in event the Debtors become delinquent after two (2) notices of default, the Automatic Stay of 11 U.S.C. §362 shall terminate as to Claimant without further recourse and claimant shall be allowed to take any and all steps necessary to exercise any and all rights it may have in the collateral.

---

[9]Debtor disputes the amount alleged to be owed by Wells Fargo and includes the alleged amounts owed only for feasibility purposes.

[10]Wells Fargo asserts that it is either the servicer of Southwest Funding, L.P. or its successor in interest. The Plan treatment proposed herein is without waiver of any claims the Debtor may have as to Wells Fargo's actual ownership of the Note or validity of any Wells Fargo claim.

[11]Wells Fargo asserts that it is either the servicer of Southwest Funding, L.P. or its successor in interest. The Plan treatment proposed herein is without waiver of any claims the Debtor may have as to Wells Fargo's actual ownership of the Note or validity of any Wells Fargo claim.

The Debtor reserves the right to pre-pay the New Wells Fargo Note # 1 and/or New Wells Fargo Note # 2 at any time without penalty. The Class 12 creditor shall retain its liens of the Debtor's property until paid in full in accordance with this Plan. Class 12 is impaired under this Plan.

5.14    Class 13 Claimants (Allowed Secured Claims on Wells Fargo Auto Finance) are not impaired and will be satisfied as follows: The Debtor executed that certain note and security agreement on November 18, 2006 for the purchase of that certain 2003 Cadillac automobile ("Vehicle"). The Debtor shall make  contractual payments on the Vehicle. Wells Fargo Auto Finance shall retain its liens on the Vehicle until paid in full under this Plan. The Class 13 Creditor is not impaired under this Plan.

5.15    Class 14 Claimants (Allowed Unsecured Creditors) are impaired and shall be satisfied as follows: All Allowed Unsecured Creditors shall be paid  out of the unsecured creditors pool. The Debtor shall make 60 equal monthly payments into the unsecured creditors pool  in the amount necessary to provide for 100% payment of all Allowed Class 14 Claimants. Allowed Unsecured Creditors shall receive their pro rata share of the Unsecured Class 14 Creditors Pool on a quarterly basis commencing on the last day of the first full calender quarter after the Effective Date. The Debtor will object to any Class 14 Proof of Claim no later than 10 days prior to the confirmation hearing. The Class 14 Claimants are impaired under this Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF THE PLAN

6.1    **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2    **Ongoing Operations**: The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor and the sale or refinancing of the Hodge Note #2 Property. The Debtor shall sell or refinance  the Hodge Note #2 Property for an amount sufficient to pay in full the Hodge Note #2 which payment shall be made at closing on the sale or refinancing of the Hodge Note #2 Property.  The sale or refinancing  of the Hodge Note #2 Property will occur on or before the Effective Date. If, for any reason, the Hodge Note #2 is not paid in full with collected funds on or before the Effective Date, then the automatic stay shall be immediately terminated and lifted as to the Hodge Note #2 Property without further order of this Court and without further notice within this bankruptcy proceeding, and Hodge may thereafter pursue his rights and remedies as to the Hodge Note # 2 Property. Any sale of the Hodge Note #2 Property will be

made pursuant to 11 U.S.C. §363 and shall be free and clear of all liens, claims and encumbrances, with all liens, claims and encumbrances attaching to the proceeds of the sale remaining after payment in full of Hodge Note # 2 to the extent that any such lien, claims and encumbrances are not paid at closing. The income projections of the Reorganized Debtor are attached to the Disclosure Statement. The Debtor believes the projections to be accurate based upon current rentals and income. The Debtor does not intend to dramatically alter the current expenses and has projected only moderate growth over the Plan term. Notwithstanding any other provision in the Plan, any modification to the Plan or the Confirmation Order, to the extent that any liens of Dallas County against the Hodge Note #2 are not satisfied in full at the sale closing at which the Hodge Note # 2 is paid in full, those liens shall remain attached to the Hodge Note # 2 Property and become the responsibility of the buyer

6.3     Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

### ARTICLE 7
### SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

### ARTICLE 8
### STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected. All tenant leases and leases for rentals are expressly assumed by the Plan.

### ARTICLE 9
### EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

9.3.    Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to William White 817-431-5213. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

10.3    10.3    The Debtor shall obtain a discharge pursuant to 11 U.S.C. § 1141(d)(5) after completion of all payments under the Plan. The Debtor shall file a Motion for Discharge after Completion of Payments ("Motion") and a Statement under 11 U.S.C. § 522(q) ("Statement"). The Motion and Statement shall provide 21 days notice to all parties of the Request for Entry of A Discharge. In the event of an Objection the Motion or Statement,  the Court will conduct a hearing on the Objection. In the event of no Objection, the Court may enter the discharge.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2    To allow or disallow Claims.

14.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8    To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9    To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10   To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11   To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12   To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13   To hear and determine Reorganized Debtor's requests for orders as are consistent

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - Page 23

with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14   To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.


Respectfully submitted,

William White


/s/ William White
William White

Ann Withington


/s/ Ann Withington
Ann Withington



ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier